Oral argument not to exceed 15 minutes per side. Ms. Davis will be appellant. Good morning, Your Honors. Laura Davis for Appellant Timothy Phillips. If I could reserve three minutes for rebuttal, please. May it please the Court. In James v. The United States, Justice Alito, in his majority opinion, talked about the importance when looking at Florida's attempted burglary statute to keep in mind that it was an attempted burglary for a reason. That implicit in that chart, that conviction being on somebody's record, was that this person made the attempt, was apprehended, most likely during the attempt, was prosecuted and convicted. And so implicit in that is that somebody was present, somebody intervened, whether that was law enforcement or the business owner or the homeowner or a third party, something stopped that defendant. Here in Mr. Phillips' case, what we have implicit in a conviction for Florida third-degree burglary is that no one was present. There was no weapon, there was no assault, there was no person. And under the reasoning of James, which was decided after Matthews, United States v. Matthews was decided in the 11th Circuit, we should look and recognize that in the analysis is that Mr. Phillips was convicted of a crime that necessarily had no person present. What do you do? Did the 11th Circuit rule on this issue? It did, Your Honor, in United States v. Matthews, which was October of 2004. Any reason we should defer to the court that has Florida in it? Yes, Your Honor. If we do, you lose then, right? We would. However, as then-Judge Ginsburg ruled in Ray Korean Airlines' disaster, each federal court has an obligation to engage independently in reasoned analysis. And as in Washington Energy Company v. United States, the policy of blind adherence to the decision of another circuit, apart from any... I'm not suggesting that we should do it blind. Let's have a look. What was their analysis? Their analysis very much looked to the powder keg theory that is discussed here in the Sixth Circuit in Covington. They talk about this is a charged situation. It's a crime of stealth. Something terrible could happen. However, they ignored, they did not discuss at all the actual language of the statute where it discusses the lack of a weapon, the lack of an assault, the lack of anybody being present. I'm sorry, go ahead. It's a question of whether you look at what actually happened versus the risk that was posed by the crime that was committed, correct? In part, yes, Your Honor. Well, the residual clause covers risk, not just what actually happened, right? Correct. It covers both. And that is what Justice Alito discussed in James, was that you had to recognize, yes, you could recognize the risk, but that you also needed to recognize what was inherent in the crime. And in his case with the attempted burglary, somebody intervened. And in the crime of third-degree burglary in Florida, no one was present. So if we adhered to the powder keg theory that this is a charge situation and something horrible could have happened, then yes, Florida third-degree burglary, pretty much any crime. You know, shoplifting is a stealth offense. But wouldn't your theory carried to its logical conclusion mean that sometimes this offense would fit within the residual clause and sometimes it would not depending on what actually happened during the offense? And that's certainly not what's intended, is it? In a divisible statute, it is. And so if Shepard documents, for instance, in United States versus, I will butcher this, Ortkiese, O-R-T-K-I-E-S-E, which is the unpublished Sixth Circuit opinion, they were able to determine that the third-degree Florida statute, burglary statute in Mr. Ortkiese's case was a generic burglary because the Shepard documents reflected that he had broken into non-curtilage portions of the dwelling. This part of the statute is not divisible, though, right? It's just one definition, right? It's one. Sure, it's divisible from the other provisions, but this particular provision is not divisible under discounts, is it? You still have the divisibility of what entails. And secondly, I don't understand why you would even argue that it was divisible. Isn't it helpful to you for it not to be divisible? It is helpful, but in all honesty, Your Honor, the divisible portion of the statute is are you breaking into the curtilage or the actual physical building. But you're talking about now, you're talking about divisible between whether someone's there or not. And the actual thing that they're being prosecuted for doesn't say, you know, it doesn't do as much for if someone's there or not. Or actually it does, but everyone's agreeing that you're under the part, under the indivisible part of a divisible statute. Correct, Your Honor. I'm not arguing that that portion is divisible. That portion is indivisible. I don't want to interrupt Judge Gittins. What do you do with the part of James that refers to passersby? I think you then look again to what the Florida statute encompasses. But you could have a passerby in an uninhabited building who would say, oh, my goodness, someone's trying to get into that building. I'm going to go and stop them. Or I'm going to call the police and the police are going to come and stop them. Or you can have a passerby seeing that somebody is walking up a driveway that doesn't have a fence across it or walking through the space in the fence where somebody was able to put a boat or pushing open a gate that's been left ajar. Yes, I'm saying I don't understand the difference between the holding in James and what you want to hold us here. If the difference that you're articulating is that no one's there, because James seems to be concerned not only about who's in the building but who might pass by the building. People can't pass by a building that has nobody in it. The difference is the attempt statute in Florida requires more than just preparation and that if I'm walking up a driveway to steal the yard gnome, that may or may not fall under the attempt statute because perhaps walking... It wasn't so much talking about the actual statute at issue in James as the analysis of the court, which seems to put emphasis for this purpose on passersby. It's passersby noticing something that is going on that does not appear to be legitimate, that you have somebody with a crowbar trying to open a door or a window, somebody working at a lock. That's what we have in this case, right? It's a break-in, right? No. What the pre-sentence report, there's information... I'm talking about the statute. The statute? No. You can accomplish the violation within the statute by walking up a driveway, by going through a space in the fence, by pushing open the fence and stealing something out of the yard, out of the curtilage and entry... If there's someone in the building, then it's a crime of violence. Yes, however... That's because the person in the building is going to catch you when you get in or might see you when you get in? That would be Congress's rationale and including traditional... You have to distinguish that from somebody outside the building seeing the person sneak up on the building. I think there's a difference between sneaking and entering. I mean, if I'm dressed in all black and I've got empty bags with me, that's going to look different to somebody a passerby than me walking up to the house, which is also possible. There's case law in Florida discussing that these things are included in the curtilage. What's the strongest case that supports your position? I would say it's a combination of James v. The United States and this Court's recent ruling in Covington rejecting the powder keg theory. Okay. Thank you. If there are no further questions, I shall... Thank you. Good morning. May it please the Court, my name is Greg Sullivan. I'm an assistant U.S. attorney from Chattanooga, Tennessee, and the issue before the Court is whether the defendant's prior conviction for burglary of a structure under Florida law constitutes a violent felony for the purposes of the Armed Career Criminal Statute. As set forth in our briefs, the defendant was originally charged with burglary of a dwelling, but he was allowed to plead to a lesser-included offense of burglary of a structure under Florida law. Does generic burglary under this area of the law require that it be a dwelling? It does not, Your Honor. So generic burglary is what? Of a building or a structure, Judge, a dwelling or a structure. And in this way, the ACC is a little bit different than the career offender provisions under the guidelines. The guidelines require a dwelling or a residence. The guidelines, oh, right. For a career offender. And, Judge, you really? This doesn't become a generic burglary only because of the business about the curtilage? That's the only thing that keeps it from being a generic burglary? Yes, Your Honor. And Taylor, the Supreme Court in Taylor, when it analyzed what constitutes a generic burglary, went into that. And under the analysis of Taylor, the Florida statute would be a generic burglary, but for the fact that a dwelling or a structure, they're both defined the same way, can include the curtilage. Now, in James, the Supreme Court looked at Florida law in terms of how it interpreted curtilage, and it found that the Florida law, case law, Supreme Court, had very narrowly defined curtilage under the Florida statutes. And therefore, that didn't pose a bar from James deciding that an attempted burglary, even a burglary involving curtilage, constituted a violent felony under the residual clause of the Armed Career Criminal Act. There wasn't the limitation about nobody being there in those cases. So that's the issue here. Yes, Judge, but it's unclear from James. You can't tell from James, reading the opinion, what violation of the Florida burglary statute James committed. In one part, there is a notation that he burglarized a dwelling. But under the Florida burglary statute, you can commit a burglary whether or not the dwelling is occupied or unoccupied. I must say, breaking into a warehouse where you don't even get into the building, in common parlance, is not a violent crime any more than shoplifting in a television store or something like that. But I'm wondering if there are cases that force us to come to that conclusion, and if they are, which cases force us to that conclusion? I think James does, Your Honor. So you're both relying on James. Well, does James really force us to come to that conclusion? I mean, in James, we don't have this aspect of the crime that nobody's there, right? But definitionally, nobody is there. And James does talk about passersby, but it also talks about people in the building and so forth as part of the risk. That risk is stripped out. It's probably a big part of the risk. Part of the risk is stripped out. But when you take away part of the risk, doesn't that make the risk smaller? It does affect the degree of risk, Judge. So you would say that while we might look at James and come to the conclusion that this is a violent, what's the standard, violent felony, but it doesn't compel it. Is that true? We just have to sort of say, well, you know, there's some gray area between James and not James, and we'd have to say this is James or this is not James. But it seems to be at least just... I guess that's what I'm asking is, does James really compel us or does it just provide a basis for us to come to this conclusion? I think I would argue that it does compel you, Judge. Well, how? I don't understand how it compels when there's less risk, which you just agreed to. Judge, if you look at the reasoning of James, what James did was, first of all, it said, Congress singled out certain enumerated felonies, burglary, arson, and extortion. Yeah, but you agree it's not one of those, though, right? I'm sorry? You agree it's not one of those? It is a burglary, Judge. Well, it's not an enumerated offense, but in analyzing the attempted burglary statute under Fullerton law, they started with what's an enumerated offense and why did Congress, out of all the universe of crimes, pick these statutes. And Judge Alito said they picked it out because these types of crimes often involve the possibility of a violent confrontation. So that's the first argument. The second argument is, James said, the main risk of burglary arises not from the simple physical act of wrongfully entering into another's property, but rather the possibility of a face-to-face confrontation between the burglar and a third party. Whether an occupant, police officer... Pardon me for interrupting. If we find that that risk is less when, definitionally, there's no one there, then that reasoning applies less strongly. Is that true? Judge, I don't know that you can make that assumption because in James... Well, it's right there in the statute. No one's there. But, Judge, we don't know whether or not no one was there in James. Right, but we do know no one was there in this case. So if you're talking about risk, not talking about what actually happens, but you're talking about risk, it would seem like the risk would be less. Except for Matthews, Judge, which is the 11th Circuit case, which held specifically that this statute, an unoccupied structure, constituted a violent felony under the... Is there analysis in Matthews?  ...analysis that the Supreme Court conducted in James. That analysis is found... I thought Matthews was mainly about curtilage. It is, Judge, but when they get into it, and this is at 1275, they say, Regardless of whether a burglar breaches the roof portion of a structure, his unlicensed entry into the enclosed area surrounding the structure may bring him into close physical proximity with the same persons he might encounter if he were to enter the structure. He might come into contact with the property's owners, occupants, or caretakers. His close physical presence to the structure could lead an innocent person to investigate why he is there, and his presence alone could reasonably be perceived by any of these persons as threatening. Either the innocent or the burglar might react violently. In short, the burglar's presence in the curtilage of the structure presents a serious potential risk that violence will ensue and someone will be injured. And if I could, Judge... Is there, other than James and Matthews, is there anything... Matthews is not binding on this, although what you read addresses the issue. And I respect the judgments of other courts. Is there anything else, though? I mean, if James doesn't do it for me and Matthews doesn't do it for me, is there anything else forcing me to come to the conclusion that... Just another, if I could cite to another part of James, Judge, and you had a question about the difference between a warehouse and a residence. At 209, Judge Alito and James says, as long as the offense is a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of the residual provision. How do you distinguish shoplifting? Or do you say shoplifting is a violent felony? No, Judge, it's not. Even shoplifting something expensive that makes it a felony? Diamonds or something. It does not. The elements of shoplifting don't get us there, Judge. Why not? The residual clause doesn't get us there. But why not? Because it's not the type of activity that involves a serious potential risk of violence. Burglary does. And as analyzed in James, as analyzed in Matthews, as analyzed in other cases that have looked at the burglary statute, that's why Congress singled it out. What they singled out was generic burglary, though, right? Well, Judge, but for Judge Alito saying an overt act directed towards entry of a structure, he doesn't even say dwelling, he says structure, satisfies this test. And that's just an overt act. That's just an attempt. We've got more than an overt act here. We've actually got the burglary itself. Isn't there, or let me, is the only circuit other than the Matthews case, is the First Circuit the only other circuit to have specifically decided this issue? I think the Eleventh Circuit is the only circuit that's analyzed this specific provision of the Have you looked at Sanchez-Ramirez from the First Circuit? I have not, Judge. I believe it also. And I believe it's helpful to your position. Thank you. And, Judge Rogers, I would also point out that part of the analysis in James is talking about whether or not the armed career criminal statute requires metaphysical certainty or simply potential risk. And the statute is phrased in terms of potential risk. Not every burglary is going to involve the risk of injury to another. The defense counsel in this case is trying to elevate burglary to something more where you have to require a firearm. It's likelihood, though, right? I mean, it's likelihood, though, right? I mean, you could have a violence with respect to the shoplifting. It's just not as likely, right? Exactly. So it's just a matter of likelihood. That's where I'm stalling here. Yes, Judge. You can't just say likelihood and therefore we win. It's got to be more likely than something that's not likely. So it's somewhere along the path, right? And the thing that I fall back on in both James and in Matthew's, Judge, is under the scenario of a burglary you've got a potential for violence because you've got someone going into a structure that can be discovered. Violence can ensue very naturally under those situations, whether it's a police officer responding, a security guard, as pointed out in James, or an innocent bystander. I think kind of one of the things that seems odd about this case is that under the statute if the individual, the third party, enters the building, then it ceases to be this kind of burglary. But the risk would have to come from the other person confronting the burglar at some other point outside the structure. Yes, Judge. And so that makes it just seem, I don't know, it certainly makes it less likely to be deemed a serious potential risk. You know, I can envision a lot of situations where someone just going into a building that's discovered from the outside or just coming out of a building that's discovered from the outside. You know, the police arrive and say, come out with your hands up. They never actually enter the building, so it's an unoccupied. Certainly there are potentials. I mean, there's that kind of potential. There's also the potential that the person will be involved in a confrontation while exiting the house with stolen goods. There's a chance the homeowner will come home and not enter the house but encounter the burglar. There's a chance a passerby. I mean, there's just, yes, there's risk whether it's, but, you know, certainly it's not as strong a case for serious potential risk, although it might be enough. And I think that goes back to Judge Rogers' argument, is the risk here less because it's unoccupied? And I would have to say probably there is less risk because you don't have an occupant of the dwelling. Well, that was my point. Yes, Judge. But, I mean, whether it takes it out of serious potential risk and whether the reasoning of James ought to be persuasive to us about the risk, even though it might be less here, is another issue. And I would just point out that the Supreme Court, in looking at this, didn't say, okay, the most serious risk is from the occupant. It grouped all of these risks together, all of these third parties together, as posing a serious potential risk of injury, and that's where we're at. Unless the panel has additional questions, I'll sit down. Thank you. Counsel, before you start, how much difference does this make in this issue? I'm sorry, Your Honor? How much difference does it make in the number of months sentence? Five years. His guidelines would go from his guidelines without ACCA are above the statutory maximum slightly. I think he starts at 168 months, and so his guidelines would be the statutory maximum of 120 months. So it makes a five-year difference in his sentence. Well, it might. It might. You don't know? We don't know. Well, the guideline range would go up five years, is that what you're saying? No, the available sentence. He received 180 months. If ACCA is deemed not to be applicable, then his sentence would be capped at 120 months. Which would be four years less than the minimum guideline figure, if it was 168. Or did I misunderstand what you were saying about that? No, Your Honor, you are correct. It would be three years and change from his guideline. But it would also be within the discretion of the court, district court, whether or not. Right now it has to be a minimum of 180? Correct, Your Honor. Okay, thank you. Go ahead. Your Honors, one clarification I want to make is that the portion of the third-degree burglary statute that talks about no person being present in the structure, structure in that case encompasses both the physical building and the limited curtilage. So when we talk about somebody committing this crime and nobody being present, it's not just nobody's inside the physical four walls of the building, but that also there's nobody in the yard, nobody comes into the curtilage. As you might imagine, a police officer wouldn't stand on the sidewalk and say, stop where you are and then come forward to me gently. I would also point out that the section of Matthews that the government cited about the risk involved and the risk that is examined is that same powder keg language that this court rejects in Covington. That's an escape case. It is an escape case. It's like there's a difference going in and coming out. It's sort of the opposite, right? One is a crime of going in and the other is a crime of coming out. Or they're breaking into free society in a crime that one of the few that it's okay for that person to be shot or tased or physically confronted even if they just walked out an open door because they are escaping from a secure facility even if the secure facility isn't very secure. So while you have somebody who can do the same crime, the manner of the same crime, in Covington it mentions pushing open a door that's ajar. If somebody pushes open a gate that's ajar and walks into the curtilage with the intent to commit a crime, they have committed Florida's third degree burglary. And so they are... When the action happens in the moments afterwards, the escapee is really indistinguishable from the general public whereas after breaking in occurs the, or whatever it is, intruder, after the intrusion occurs, the intruder is in the area that might cause a confrontation. So there's a difference between escape and intrusion, isn't there? In that there is. However, again, you go back to the not anybody being there. Somebody who has escaped from a facility, they don't have a driver's license, but they may drive a car, they may commit other crimes. It's almost like a breaking into free society. If the panel has any other questions, thank you. I would rest on my briefs. We appreciate the argument both of you have given and we'll consider the case carefully. Before you leave, Judge Guy, you didn't have anything or did you? No, I think that the two of you questioned quite thoroughly. Well, I didn't want to conclude too summarily since I wasn't getting the body language side you normally get to know whether somebody wants to ask a question. That's true. Okay. All right. Thank you.